[Civ. No. 36892. Second Dist., Div. Three. June 15, 1971.]

GENE CORNELL, Plaintiff, Cross-defendant and Respondent, v.
FRANK SENNES et al., Defendants, Cross-complainants and Appellants.

**COUNSEL**

Hochman, Salkin & DeRoy and Harvey D. Tack for Defendants, Cross-complainants and Appellants.

Bachrack & Wilson and Ralph Wilson for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**SCHWEITZER, Acting P. J.**—The principal questions involved on this appeal are (1) the right of a conditional vendor of air conditioning units, installed in a commercial building at the request of the tenant without the consent of the owners, to a mechanic's lien against the realty for labor and materials, and (2), if the vendor is entitled to such lien, the effect thereon of his removal of the equipment, without the consent of the owners, after filing an action to establish and foreclose the lien.

*Facts*

In July 1967 defendants Frank Sennes and Mary Lou Sennes leased their restaurant property to Spectrum Enterprises—L.A. One, a California corporation, for five years. On August 1, 1967, defendant Hanneford, an officer of the corporation, in his individual capacity, entered into a contract with plaintiff for the purchase and installation of supplementary air conditioning units at a cost of $9,995, payable $2,000 down, $1,995 payable within six weeks, and the balance payable in equal monthly payments.

The contract provided in pertinent part: "All equipment and parts to be on rental until paid for. . . . All material and equipment sold under this Contract, whether affixed to realty so as to become part thereof or not, shall be deemed personal property and the title thereto shall remain in Seller until . . . [paid for] . . ."; that in the event of the purchaser's default, the seller could enter the premises and remove the equipment; that "[i]n the event the building . . . is not owned by Purchaser, the Purchaser agrees to make all necessary arrangements and secure the approval, or the permission, of the building owner for this installation, and Purchaser agrees to hold the Seller harmless from any claims or damage sought by the building owner as a result of, or arising from, the installation or removal of this equipment." Defendant-owners were not parties to this agreement and there is no evidence that the purchaser sought their approval of the installation or that they had knowledge of the execution or contents of the agreement.

The installation required a modification of the existing air conditioning system by the addition of two eight-ton units,[1] a blower, additional ducts, and connections with the existing ducts and electrical system. The new units and blower were not attached to the building; they were held in place on the roof by their own weight and rested on 4 x 4 redwood blocks. The record is not clear as to what, if any, alterations were made to the premises in the installation of the additional ducts; there is no evidence as to whether holes had to be cut in the roof, walls and ceilings, and no evidence of the size, location and method of attachment.

Although defendant owner-lessors had knowledge of the installation, they did not file a notice of non-responsibility.

Shortly after completion of the job, the corporate lessee vacated the premises, leaving a balance owing on the contract of $7,795. Plaintiff recorded a claim of lien against the property in this amount, notified defendant-owners, and thereafter filed this action. The first cause of action sought as against defendant-owners to establish and foreclose a mechanic's lien against the realty; since there was no contract between plaintiff and the owners of the realty, plaintiff did not seek a personal judgment against them. (See 32 Cal.Jur.2d, Mechanics' Liens, § 166, pp. 801-802.) The second cause of action sought as against Hanneford to recover the balance due on the contract, including interest and attorneys fees. After the action was filed and before the defendant-owners filed any pleadings, plaintiff entered the premises and removed the units and blower without the permission of defendant-owners and credited defendants with $2,200, the purported value thereof, leaving an unpaid balance of $5,595.

Defendant Hanneford defaulted and judgment was entered against him for $5,595, interest, costs, and attorneys fees. He is not a party to this appeal.

By answer defendant-owners denied liability and by counterclaim and cross-complaint alleged that the air conditioning units had become affixed to the realty, that plaintiff wrongfully removed the units, and that in doing so plaintiff damaged defendants' premises. Defendants sought judgment for the value of the units allegedly converted by plaintiff, interest thereon from the date of the alleged conversion, and $1,000 as damages to the realty. After a nonjury trial judgment was entered against the defendant-owners establishing a mechanic's lien against the real property in the sum of $5,595, together with interest from September 25, 1967 (the date the lien was recorded) to date of judgment, cost of suit, and decreed foreclosure of the lien. The judgment further provided that defendants take

---

[1] The record is not clear as to whether "eight tons" refers to the weight or the capacity of the units.

nothing by their counterclaim and cross-complaint, the court having specifically found that if they "sustained any damage, the same has been eliminated by virtue of the credit of $2,200.00 [for the repossessed equipment] allowed by the Court . . . ."

Defendant-owners appeal and argue that if the equipment became affixed to the realty, plaintiff had no right to repossess it; that his repossession constituted a conversion of defendants' property, subjecting plaintiff to damages; that his repossession also changed the character of the equipment from realty to personalty and constituted a waiver of plaintiff's right to a mechanic's lien. In the alternative, defendants argue that under the facts of this case the equipment never became affixed to the realty and therefore plaintiff had no right to a mechanic's lien.

### *Mechanics' Liens*

■ Real property is subject to a mechanic's lien for labor and materials *only* if the chattels installed became fixtures attached to the realty (*R. Barcroft & Sons Co.* v. *Cullen*, 217 Cal. 708, 711-712 [20 P.2d 665]; *Kruse Metals Mfg. Co.* v. *Utility Trailer Mfg. Co.*, 206 Cal.App.2d 176, 179-180 [23 Cal.Rptr. 514]) and the labor performed resulted in a permanent improvement to the realty. (*Howard A. Deason & Co.* v. *Costa Tierra Ltd.*, 2 Cal.App.3d 742, 753 [83 Cal.Rptr. 105]; *Nolte* v. *Smith*, 189 Cal.App.2d 140, 148-149 [11 Cal.Rptr. 261, 87 A.L.R.2d 996].) The question is one of fact or mixed law and fact in each case. (*R. Barcroft & Sons Co.* v. *Cullen, supra*, 217 Cal. at p. 711; *Kruse Metals Mfg. Co.* v. *Utility Trailer Mfg. Co., supra*, 206 Cal.App.2d at p. 180; see 1 Witkin, Summary of Cal. Law (1960) Personal Property, § 30, pp. 800-801.)

■ In the instant case the trial court found that plaintiff "furnished and supplied labor and materials for air conditioning and ventilating the building . . . located upon the . . . real property" and that "[t]he labor and materials furnished and supplied . . . were actually used and consumed in the construction, alteration and repair of the building . . . located upon the . . . real property." Based upon these findings the trial court concluded that plaintiff had established a lien and decreed foreclosure. Since the labor appears to have been incidental to and was performed exclusively in the installation of the equipment, the crucial issue presented is whether the equipment became affixed to the realty. No finding was made on this ultimate fact. For this reason, as well as other reasons hereinafter mentioned, we must reverse the judgment as to the defendant-owners. The deficiency in the findings is highlighted by the following statement from Annotation, Air-Conditioning Plant, Equipment . . . as Fixtures, 43 A.L.R.2d 1378 at page 1379: "It is not possible to

state any absolute rule as to the character of an air-conditioning plant, equipment, apparatus, or the like, as a fixture, because of the many varying circumstances reflected in the cases. All that can be said at this point is that in some cases, under the particular circumstances involved, the unit has been held to be a part of the realty, whereas in other cases, under the particular circumstances, the unit has been held to remain personalty." This statement is applicable to somewhat similar types of equipment. (See Annotations, Refrigerator or Refrigerating Plant as Fixture, 64 A.L.R. 1222, 169 A.L.R. 478; Heating Plant as Fixture, 126 A.L.R. 599; Electronic Computing Equipment as Fixture, 6 A.L.R.3d 497.)

*Fixtures*

For the assistance of the court on retrial we briefly discuss some of the factors to be considered in determining whether the equipment became affixed to the realty.

Section 660 of the Civil Code gives a common law definition of fixtures. ■ "However, under modern theories, the manner of its annexation is not the sole nor the most important test. There are three main factors: (1) physical annexation; (2) adaptation to use with real property; (3) *intention* to annex to realty. Of these, intention is the most significant, but the manner of annexation and the use to which the property is put are relevant in determining such intention. [Citations.]" (Italics in original). (1 Witkin, Summary of Cal. Law (1960) Personal Property, § 23, p. 793; see also *Standard Oil Co.* v. *State Bd. of Equal.*, 232 Cal.App.2d 91, 97 [42 Cal.Rptr.543].) "A widely accepted view is that the united application of all three tests is required, but it is evident that even this will not suffice in all situations and that there are other factors, including the relationship of the claiming parties, the relative difficulty of removal, the nature of the article annexed, and whether the fact of annexation is open and apparent. . . ." (35 Am.Jur.2d, Fixtures, § 4, pp. 702-703; see *R. Barcroft & Sons Co.* v. *Cullen, supra,* 217 Cal. at pp. 711-713; *Kruse Metals Mfg. Co.* v. *Utility Trailer Mfg. Co., supra,* 206 Cal.App.2d at p. 182.)

As to the intention of the parties, we have no evidence as to the intent of the defendant-lessors and their lessee with regard to the right of the lessee to install and remove chattels; their lease was not introduced into evidence. We do have some evidence of the intention of the plaintiff and the lessee-purchaser; the conditional sales contract provided that the equipment was installed on a "rental until paid for" basis, that it would be "deemed personal property," and that the conditional vendor could remove it if the purchaser defaulted.

We have found no reported decision in California discussing the right

of a vendor, who retains title to an affixed chattel, to a mechanic's lien as against the owner of the realty. The right to a mechanic's lien under such circumstances has been recognized in other jurisdictions. (See 53 Am. Jur.2d, Mechanics' Liens, § 304, pp. 836-837; 57 C.J.S., Mechanics' Liens, § 227, p. 802; Annotation, 65 A.L.R. 282, 305.) ■ We see no reason why the retention of the title *per se* should deprive a conditional vendor of an affixed chattel to a mechanic's lien; we consider it as merely one of the factors to be considered by the trial court in making its determination as to whether the chattel became a fixture. In this connection it must be stressed that we are not dealing here with a right to a lien as against subsequent purchasers, mortgagees or other encumbrancers without notice, but the owner of the realty who had notice of an improvement and failed to file a notice of non-responsibility.

As noted above, the relationship of the parties is an important consideration in determining the character of equipment as a fixture and sanction the application of rules of law differing as the relationship of the parties varies. As between a vendor and vendee of real estate, or the mortgagor and mortgagee of real estate, the rule in reference to the rights with respect to fixtures is construed most strongly in favor of the vendee or mortgagee. (See *R. Barcroft & Sons Co.* v. *Cullen, supra,* 217 Cal. at pp. 711-715; *Kruse Metals, supra,* 206 Cal.App.2d at p. 182; 32 Cal. Jur.2d Mechanics' Liens § 29, pp. 632-633; 35 Am.Jur.2d, *id.,* § 34, p. 726.) With respect to the conditional sale of goods that are affixed to realty, Witkin states that "they become *real property.* As between the *buyer and conditional seller,* they will be treated as personal property, and title will remain in the seller. But as to *third persons* without notice, the goods are part of the land or building, and, since the interest of the seller in that part of the building does not appear of record, it is ordinarily void as against *subsequent purchasers, mortgagees or other encumbrancers.* [Citations.]" (Italics in original.) (1 Witkin, Summary of Cal. Law (1960) Security Transactions in Real Property § 18, p. 717; see also 1 Witkin, *id.* Sales § 45, p. 526.) Thus, under these and similar authorities, it would be legally possible, in the absence of an agreement to the contrary, to reach a conclusion that as between a conditional vendor of an affixed chattel and the tenant-purchaser, the article is to be considered as personalty, but as between the same vendor and the owner of the realty, the same equipment, attached in the same manner, would be deemed to be a part of the realty.

### Waiver of Right to Mechanic's Lien

■ As we have pointed out, plaintiff herein is entitled to a mechanic's lien against the real estate *only* if it be found that the equipment became

affixed to the realty and lost its identity as personalty. Defendants argue that if such finding is made, plaintiff has waived his right to a lien by repossessing the equipment without defendant's consent and reselling it to a third person, thus depriving the defendants of all benefits.

With respect to this argument it must be noted that the mechanics' lien law "does not seem to contemplate, as an essential prerequisite to the existence of a lien under it, that the owner must be benefited by the labor bestowed on the materials furnished." (*Hardwood Interior Co.* v. *Bull,* 24 Cal.App. 129, 131 [140 P. 702]; 32 Cal.Jur.2d, Mechanics' Liens, § 6, pp. 601-602.) On the other hand we must recognize that " ' " [w]hile the essential purpose of the mechanics' lien statutes is to protect those who have performed labor or furnished material towards the improvement of the property of another [citation], inherent in this concept is a recognition also of the rights of the owner of the benefited property. It has been stated that the lien laws are for the protection of property owners as well as lien claimants. . . ." ' [Citations.]" (*R. D. Reeder Lathing Co.* v. *Allen,* 66 Cal.2d 373, 379 [57 Cal.Rptr. 841, 425 P.2d 785].)

There is no question but what a mechanic's lien may be waived by the claimant. Waiver "does not require a formal contract, but may be inferred from the circumstances and the conduct of the parties. [Citations.]" (*E. K. Wood Lumber Co.* v. *Higgins,* 54 Cal.2d 91, 94 [4 Cal.Rptr. 523, 351 P.2d 795].)

"[O]rdinarily the fact that one who furnishes materials or machinery for improvements on land retains the title to the materials or machinery until they are paid for does not deprive him of the right to a mechanics lien. However, *reasserting title to materials for which a lien is claimed and selling them to another person constitute a waiver of the lien.*" (Italics added.) (57 C.J.S. Mechanics' Liens, § 227, p. 802, citing as authority for italicized words, *Barnett* v. *Stevens,* 16 Ind.App. 420 [43 N.E. 661], rehg. den. 45 N.E. 485.) We have been unable to find any other reported authority for this italicized statement; we accept it as a sound and reasonable legal principle.

Here, under the conditional sales contract between plaintiff and the tenant, the equipment remained personalty, subject to removal and repossession on default. But as we have pointed out, it is not legally inconsistent for the same equipment to be considered as a fixture as to the owner who is not a party to the contract and who has no knowledge of the terms thereof. Since defendant-owners were not parties to the conditional sales contract and were therefore not subject to personal liability, as to them plaintiff recognized the foregoing principle and elected to treat

the equipment as affixed in order to impress the realty with a mechanic's lien. He then, without the consent of defendants, but pursuant to his contractual rights with the tenant, entered the premises, repossessed and sold the equipment as personal property to a third person. We hold that under these circumstances, as to the defendant-owners the plaintiff voluntarily elected to treat the equipment as personalty, and that as a matter of law plaintiff waived his right to a mechanic's lien against the real property.

Although it might be argued that the lien for labor is divisible from that for materials, and that the waiver should not be extended thereto, we have found no authority discussing this question. In the absence thereof, we hold that under the facts of this case, where the labor claim was founded solely on the installation of the material furnished, a waiver of the lien as to the latter must be deemed a waiver of the lien for labor.

### Damages

The only monetary damages sought by and awarded to plaintiff against defendant-owners was interest on the amount of the mechanic's lien. Since we have found that plaintiff waived his right to the lien, plaintiff is not entitled to a judgment against defendants.

By counterclaim and cross-complaint defendants sought and were denied damages for the value of the repossessed equipment, if found to have been affixed to the realty, damage to the realty caused by the installation and removal of the equipment, and damages for the trespass in entering the premises and removing the equipment without their permission and consent. The measure of their damages will depend upon the determination on retrial as to whether the equipment became affixed to the realty.

The general rule is that "the proper measure of damages for the wrongful removal of a fixture is the value of the fixture in place as part of the realty, and not what it would sell for on the open market removed from the building." (*Wilmerton* v. *Morton*, 74 Cal.App.2d 891, 897 [169 P.2d 992]; cf. *Rhoda* v. *Alameda County,* 58 Cal. 357; *Givens* v. *Markall,* 51 Cal.App.2d 374, 380 [124 P.2d 839].)

This rule was modified in 1953 by the enactment of section 1013.5 of the Civil Code, which created a right to remove in a person who, "acting in good faith and erroneously believing because of a mistake either of law or fact that he has a right to do so" affixes chattels to the land of another, and provides that his liability to the landowner is limited to damages resulting from the affixing and removal of the chattel. As of this date section 1013.5 has not been judicially construed in any reported decision.

It has been stated: "Applying this new law of fixtures, any affixer seems to be given a right of removal merely upon payment of the appropriate damages, regardless of injury to the premises, as long as the chattel was affixed in good faith." (27 So.Cal.L.Rev. 89.) Similar statements suggest the same interpretation. (See 1 Witkin, Summary of Cal. Law (1960) Security Transactions in Real Property, § 18, pp. 717-718; *id.,* Personal Property, § 23, p. 794; *id.,* § 26, p. 796; 2 Witkin, Summary of Cal. Law (1960) Real Property, § 8, p. 869; see also Merryman, *Trespassing Improvers* (1959) 11 Stan.L.Rev. 456 at pp. 478-480.) Such statements are misleading as they overlook the second prerequisite of section 1013.5; the removal statute is applicable only if the article was affixed (1) in good faith and (2) under a mistaken belief of a right to affix. (See 1 Witkin, *id.,* Personal Property, §§ 27-28, pp. 798-799; 2 Witkin, *id.,* Real Property § 259, p. 1085.)

Here, if on retrial the court finds as to defendant-owners that the equipment was a fixture and that each of the forementioned elements were present, the measure of damages to the defendant-owners would be that set forth in section 1013.5 of the Civil Code; if it finds that either factor set forth in section 1013.5 was not present, then the measure of damages would be that set forth in *Wilmerton* v. *Morton, supra,* 74 Cal.App.2d at p. 897.)

On the other hand if on retrial the court finds as to defendant-owners that the equipment had not become affixed to the realty but remained as personalty, the measure of damages would be the difference in the value of the real property immediately prior to any injury to the realty and the value immediately thereafter, unless the cost of restoration is less than such difference, in which case the cost of repair is the proper measure of damages. (*Charles* v. *Reuck,* 179 Cal.App.2d 145, 147 [3 Cal.Rptr. 490]; see 2 Witkin, Summary of Cal. Law (1960) Torts §§ 435-436, pp. 1630-1631.)

In addition to the foregoing defendant-owners sought damages for trespass. Although plaintiff admitted entering the premises and removing the equipment without the permission or consent of the owners, no finding was made thereon. Such admission is sufficient to support an award of damages for trespass. Intent to harm is not required. (*Roberts* v. *Permanente Corp.,* 188 Cal.App.2d 526, 531 [10 Cal.Rptr. 519].) A trespass without injury will justify only nominal damages. (2 Witkin, *id.,* § 434, p. 1630.)

Judgment reversed as to defendants Frank Sennes and Mary Lou Sennes.

Cobey, J., and Allport, J., concurred.

A petition for a rehearing was denied July 7, 1971, and respondent's petition for a hearing by the Supreme Court was denied August 13, 1971.